**Gilford DENTON, Plaintiff,**

v.

**Casper WEINBERGER, Secretary of Health, Education, and Welfare, Defendant.**

**No. 74 Civ. 4158.**

United States District Court, S. D. New York.

April 14, 1976.

---

Donald Grajales, Project Director, Bronx Legal Services Corp., New York City, for plaintiff; Vincent Gagliardi, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant; Borge Varmer, Regional Atty., Dept. of H. E. W., Jerry L. Siegel, Asst. U. S. Atty., Michael B. Thomas, Asst. Regional Atty., Dept. of H. E. W., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff brought this action pursuant to section 205(g) of the Social Security Act[1] for judicial review of a final decision of the Secretary of Health, Education, and Welfare ("Secretary") denying plaintiff's claim for disability insurance benefits for the period from March 13, 1966 to February 8, 1969.[2] The Secretary determined that plaintiff was under a disability which prevented him from engaging in substantial gainful activity and, thus, entitled him to benefits under the Act for a period commencing on February 8, 1969 but not prior thereto.[3] Defendant moves for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure on the ground that substantial evidence upon the record as a whole supports the Secretary's determination.

The Magistrate to whom this matter was referred considered the record at length and concluded that "the Secretary's finding that [plaintiff] was not disabled prior to February 8, 1969 is supported by substantial evidence." The sole issue is claimant's contention that he was disabled earlier, on March 13, 1966. This Court, after its own study of the entire record, agrees with the Magis-

---

1. 42 U.S.C. § 405(g).

2. *See* 42 U.S.C. § 423.

3. The term "disability" is defined in the Act as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

trate's conclusion and, accordingly, the Secretary's determination must be upheld.[4]

■ Plaintiff Gilford Denton is 59 years of age with a limited public school education, having spent sixteen years of his youth in a state institution. He has been employed in a series of "general labor" jobs, including cook, lens polisher, assembler and hotel desk clerk. However, he has not worked since March 13, 1966, when, he alleges, he was forced to leave his job as a hotel security guard because of ill health. He asserts that, since that date, he has been totally disabled by a duodenal ulcer, combined with bronchial asthma and bilateral inguinal hernias, all exacerbated by his general state of anxiety. Plaintiff has been receiving total disability payments from the Veterans Administration based on these conditions since April 5, 1966.[5]

The Social Security Administration has extensively considered plaintiff's claim that the onset of his disability was March 13, 1966. After various intermediate proceedings, including a hearing before a Trial Examiner at which petitioner was represented by counsel, an Administrative Law Judge, upon review of the entire record, found that "since February 8, 1969, but not prior thereto," plaintiff has been disabled. Dissatisfied with this resolution, plaintiff appealed and the decision was affirmed by the Appeals Council, whereupon plaintiff brought the instant action.

Plaintiff's basic objection to the Secretary's denial of his benefits for the period March 13, 1966 to February 8, 1969 and to the Magistrate's recommendation that the Secretary's determination should be affirmed is that both the Hearing Examiner and the Magistrate

ignored subjective evidence of pain and suffering offered by plaintiff and two of his friends. Thus, it is particularly appropriate to fully review all of the medical evidence presented.

Plaintiff was admitted to the New York Veterans Administration Hospital on April 4, 1966 for intractable epigastric pain, seemingly indicative of a peptic ulcer. He was placed on a peptic ulcer regimen and a complete "work-up" was done, including gastric analysis and a GI series, which revealed a huge ulcer crater with a deformity of the duodenal cap. Plaintiff remained in the hospital for twenty-four days' therapy of rest, diet, antacids and anticholinergics. He was given various laboratory tests as well as a chest x-ray and EKG, all of which proved normal. His condition on discharge was reported to be "improved" and the prognosis "good."

In August of the same year, the Veterans Administration ordered a medical examination of plaintiff. The examining physician diagnosed a "duodenal ulcer chronic" and "bilateral inguinal hernia." Although plaintiff complained at that time of "coughing spells" and described a history of "asthma bronchial," the physician's report noted no hospitalization or treatment for asthma, no dysnpea, no cyanosis, no clubbing and also that the plaintiff's lungs were clear and his exercise tolerance normal.

Then, in October 1966, plaintiff was referred by the New York State Department of Social Welfare to Dr. J. D. Matis, a specialist in cardiovascular diseases. Dr. Matis thoroughly examined and tested plaintiff. He diagnosed a large right inguinal hernia, a chronic duodenal ulcer and asthmatic bronchitis with a "mild reduction in pulmonary function due to the . . . bronchitis" but with "no

4. 42 U.S.C. § 405(g). *See also Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975); *Gold v. Secretary of Health, Educ., & Welfare*, 463 F.2d 38, 41 (2d Cir. 1972); *Pucci v. Richardson*, 369 F.Supp. 1344, 1346 (S.D.N.Y.1973).

5. Disability for the purposes of the receipt of veterans' benefits does not control the issue of

eligibility for Social Security benefits. *Hess v. Secretary of Health, Educ., & Welfare*, 497 F.2d 837, 841 n. 5 (3d Cir. 1974); *Zimbalist v. Richardson*, 334 F.Supp. 1350, 1355 (E.D.N.Y. 1971). *Cf. Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975); *Robinson v. Richardson*, 360 F.Supp. 243, 249 (E.D.N.Y.1973).

evidence of any chronic obstructive lung disease." He reported that plaintiff's functional ability to walk, stand, sit, lift, carry, stoop, bend and kneel was "without limitation." Dr. Matis recommended a bland diet and abstention from smoking.

From 1967 until early 1969 Dr. Frank Weiser was plaintiff's treating physician, seeing him once every two or three months. Dr. Weiser submitted a report to the Social Security Administration dated January 22, 1969, in which he diagnosed a duodenal ulcer and bronchial asthma. However, he put a question mark before his finding of asthma and plaintiff himself testified before the Administrative Law Judge in 1969 that Dr. Weiser refused to give him a letter attesting to his inability to climb stairs because Dr. Weiser considered plaintiff "a fake."

Plaintiff was next examined by Dr. Benjamin L. Kohnop in February 1969 for purposes of a report which Dr. Kohnop submitted to the New York State Department of Social Services, Bureau of Disability Determinations, on February 8, 1969. After a battery of tests was performed on plaintiff, including laboratory tests, chest x-ray and ventilation tests, Dr. Kohnop diagnosed obesity, duodenal ulcer, bilateral inguinal hernias and asthmatic bronchitis "with a marked reduction of pulmonary function." He stated that, in his opinion, plaintiff had a "moderately severe medical impairment," but added that with "weight reduction and the proper care of his ulcer and his asthmatic condition, his physical capacity should increase greatly."

Thus, the first hint in the abundant medical evidence submitted that plaintiff's infirmities might be disabling does not appear on the record until February 8, 1969. And then a vocational expert, Dr. Emerson Coyle, testified at the 1969 hearing that he considered Dr. Kohnop's report "as consistent with feasibility of the [plaintiff] securing substantial gainful employment in light sedentary objectives," including "office work, desk clerk, general clerical, file clerk, office machine operator, bench assembly work, checker, examiner, inspector, packer, wrapper, and machine operative." These are precisely the types of jobs which plaintiff has held in the past.

■ If a judgment were to be made exclusively upon the medical record, the Secretary's decision that plaintiff was not disabled prior to February 8, 1966 may not be overturned for lack of substantial evidence. However, as our Court of Appeals recently held, "[a] physical or mental impairment 'does not cease to exist merely because it is difficult of proof.' " [6] Subjective evidence of pain and suffering as attested to by the plaintiff and by witnesses having knowledge of his life must be considered and evaluated since "it is common knowledge that physical phenomena of a debilitative nature may work differing degrees of hardship on different persons." [7]

Plaintiff testified at the hearing that he had frequent asthmatic attacks, that he slept badly at night, that he became tired easily and was unable to walk more than a few blocks at a time, and that he had trouble with his diet. His difficulty in sleeping and his overall discomfort were confirmed by a friend and by his roommate. However, plaintiff also testified that he did such household chores as cleaning, sweeping, mopping, washing dishes, taking laundry to the laundromat, cooking, shopping for groceries and that he took walks.

■ Plaintiff's subjective complaints of pain and his descriptions of his symptomology were specifically adverted to and taken into consideration by Dr. Coyle, the vocational expert at the hearing, who stated that he "would still consider [plaintiff] capable of substantial gainful employment in light sedentary

---

6. *Cutler v. Weinberger,* 516 F.2d 1282, 1287 (2d Cir. 1975), *quoting Celebrezze v. Warren,* 339 F.2d 833, 838 (10th Cir. 1964).

7. *Ber v. Celebrezze,* 332 F.2d 293, 299 (2d Cir. 1964).

employment." There is simply no basis for plaintiff's charge that the Hearing Examiner at the 1969 hearing and, more recently, the Magistrate reviewing this matter, failed to take plaintiff's subjective evaluation of his infirmities into account.

The Court concludes that there was substantial evidence upon the record as a whole to support the Secretary's determination that plaintiff was not prevented by his impairments from engaging in substantial gainful activity during the period from March 13, 1966 to February 8, 1969. Accordingly, defendant's motion for judgment on the pleadings is granted.